In re BUSINESS PRODUCTS, INC., Debtor.

BUSINESS PRODUCTS, INC., Plaintiff,

v.

Mark ACCORD, Gus Hermann, Vince Paglino, Modular Mailing Systems, Inc., and International Mailing Systems, Inc. f/k/a Better Packages, Inc., Defendants.

Bankruptcy No. 86–197–BKC–8P1.
Adv. No. 87–156.

United States Bankruptcy Court, M.D. Florida, Tampa Division.

Sept. 2, 1988.

Bernard J. Morse, Tampa, Fla., for plaintiff.

Frederick J. Mills, Tampa, Fla., for Modular Mailing Systems, Inc., Vince Paglino, and Gus Hermann.

Judith W. Simmons, Tampa, Fla., for International Mailing Systems, Inc.

## ORDER ON MOTION FOR SUMMARY JUDGMENT

ALEXANDER L. PASKAY, Chief Judge.

THIS IS a Chapter 11 case and the matters under consideration are claims set forth in a two count Complaint filed by Business Products, Inc. (Debtor). The Complaint, which names Mark Accord, Gus Hermann, Vince Paglino, Modular Mailing Systems, Inc. and International Mailing Systems, Inc., f/k/a Better Packages, Inc., as Defendants, seeks, in Count I, compensatory punitive damages against all the named Defendants except International Mailing Systems, Inc., f/k/a Better Packages, Inc. (IMS). The claim for damages against these Defendants is based on tortious interference with business relationships. The claim set forth in Count II also seeks damages against IMS based on an alleged unjustified unilateral termination of a dealership between the Debtor and IMS.

The current matter under consideration is a Motion for Summary Judgment filed by IMS. It is the contention of IMS that there are no genuine issues of material fact and it is entitled to a resolution of the claim asserted by the Debtor in its favor as a matter of law. The following facts which appear from the record are without dispute:

In October, 1983, the Debtor and IMS entered into a contractual relationship whereby the Debtor was appointed to be an authorized dealer for the products manufactured by IMS. The agreement was not formalized and the only written documentation concerning this contractual relationship between the Debtor and IMS is a letter (Exhibit A attached to the Complaint). The letter, dated October 14, 1983, signed by Howard H. Kuiper, National Sales Manager of IMS, was addressed to Mr. Clark Gunn, President of the Debtor.

This letter, in essense, stated that Business Products, Inc., the Debtor, was recognized as a factory authorized dealer for IMS/Hasler postage meters and mailing machines. The letter failed to contain any other specific terms concerning the arrangement between the Debtor and IMS. Further, it was totally silent as to the duration of the relationship and there is no mention in the letter of the terms of the arrangement between the parties or of the procedure for terminating the relationship. Because of the letter's lack of specificity, it is evident that both parties had an absolute right to terminate the relationship at any time.

The deposition of the president of the Debtor (Gunn's Deposition, Page 25, Line 24) clearly indicates that no one on behalf of IMS told the president of the Debtor that the relationship between the parties was for a specified period of time. It appears that the relationship between the parties deteriorated and in December, 1984, IMS terminated the Debtor's dealership (Exhibit 3 to the Deposition of Dunn). Based on the foregoing, it is the contention of IMS that under the laws of the State of Florida, there is no viable cause of action for terminating a dealership agreement which is terminable at will, that is which does not have a fixed term and does not contain a provision for the procedure to deal with defaults under the agreement and termination of the agreement, citing *Florida–Georgia Chem. Co. v. National Laboratories, Inc.*, 153 So.2d 752 (Fla. 1st DCA 1963). *Florida–Georgia* involved an action by an agent who sought to recover damages for the breech of an oral exclusive sales agency agreement. The District Court of Appeals, on appeal from the final judgment by the Circuit Court which dismissed the third amended complaint, reversed. The Court of Appeals stated that under the laws of this State, a contract which contains no provision for duration or termination is lacking in mutuality or certainty of consideration and may be terminated by either party at will. Further, the Court stated that a termination of the contract is not a breach of the contract and, therefore, will not support an action for

**516**

damages. In *Florida–Georgia,* the Court of Appeals reversed only because the amended complaint alleged that the breach occurred prior to the termination while the agreement was still in effect. The Court of Appeals relied for its holding on cases from other jurisdictions, *e.g. Abrams v. George E. Keith Co.,* 30 F.2d 90 (3d Cir., 1929) and *Meyer v. Pulitzer Pub. Co.,* 156 Mo.App. 170, 136 S.W. 5 (Mo.App.1911). IMS also cites, in support of its Motion, the case of *Muller v. Stromberg Carlson Corp.,* 427 So.2d 266 (Fla. 2d DCA 1983). *Muller* involved a termination of the employment contract which contained the language indicating that the contract was terminable at will of either party. Based on this, the Court held that the unilateral termination created no viable claim for damages.

In opposition of the Motion, the Debtor relies on *Burger Chef Systems, Inc. v. Burger Chef of Fla., Inc.,* 317 So.2d 795 (Fla. 4th DCA 1975). *Burger Chef* involved the termination of a franchise where the franchisee sought a judgment compelling specific performance and an injunction preventing the franchisor from terminating the franchise. The Court of Appeals held that mutuality of obligations and remedies are essential to a claim for specific performance and if the mutuality is lacking there is no right to specific performance. Even a cursory reading of *Burger Chef* leaves no doubt that it furnishes no support to the claim of the Debtor. By way of dicta, the Court of Appeals stated that the franchisee might obtain damages for the breach by the franchisor under certain circumstances, and stated, quoting *62 Am.Jr. 2d 769 § 12 (Termination of Franchise 1972)* that an arbitrary termination of a contract without cause may form the basis for a viable claim for damages. This statement was based on the proposition that in a franchise situation the franchisee usually makes a substantial committment in time and money to develop and establish the business of selling the product or service of which the franchisor will also be a beneficiary. Thus it would be unfair to permit the franchisor to wait until this is done and then unilateraly terminate the franchise

agreement. The quoted statement in Am. Jur.2d also states that generally franchise contracts have a specific term of years and, of course, a franchise agreement which fixes a definite term cannot be terminated unilaterally solely at the option of the franchisor. There is nothing in *Burger Chef* which would even remotely resemble the facts in this case, all of which are without dispute. First, there is nothing alleged in the Complaint that this a franchise agreement. Second, there is nothing in this record to indicate that the Debtor, in reliance of the dealership agreement, made substantial committments in time and money to develop and establish a business of selling the product of IMS. Based on the foregoing, this Court is satisfied that the claim for damages against IMS as stated in Count II of the Complaint cannot be sustained.

Accordingly, it is

ORDERED, ADJUDGED AND DECREED that the Motion for Summary Judgment be, and the same is hereby granted, and Count II of the Complaint is hereby dismissed with prejudice.